UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
District Court File No. 20-mj-681 TNL

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>SHADOR TOMMIE CORTEZ JACKSON,<br><br>    Defendant. | **AFFIDAVIT OF SPECIAL AGENT SARA THOMAS IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT** |

I, Sara Thomas, being first duly sworn, depose and state as follows:

1. I make this affidavit in support of an application for a criminal complaint charging the defendant, Shador Tommie Cortez Jackson, who will from this point forward be referred to as "JACKSON," with arson, in violation of 18 U.S.C. § 844(i), in connection with a fire that was deliberately set inside Target Corporation's corporate headquarters building, located at 1000 Nicollet Mall, Minneapolis, Minnesota, on or about Wednesday, August 26, 2020.

## AGENT BACKGROUND AND EXPERIENCE

2. I am a Special Agent of the United States Department of Justice's Bureau of Alcohol, Tobacco, Firearms, and Explosives, commonly referred to by the acronym "ATF." I have been an ATF Special Agent since December 2016. I have been assigned to ATF's St. Paul Field Division since September of 2018, where I am involved in various facets of ATF's enforcement programs, including arson and explosives investigations. I was previously assigned to the ATF Atlanta Field Division's Firearms Trafficking Group, which specialized in criminal investigations related to the movement of firearms from the legal market to the illegal market. These investigations included online firearms trafficking investigations. During this assignment, I

1

attended the ATF's advanced firearms trafficking school, which provided me with specialized training related to firearms trafficking investigations and techniques. The techniques included utilizing GPS tracking devices, Pen/Trap and Trace, analyzing large amounts of data to identify patterns, and interviewing.

3. The investigation of arson is one of ATF's core missions and competencies. During my time with ATF, I have investigated multiple cases falling within the ATF's Arson and Explosives jurisdiction. ATF has provided me with significant training on arson and explosives. This training included four weeks at the ATF National Academy and more than four weeks of separate training on the ATF's Arson and Explosives mission. Additionally, I have participated in advanced explosives training at the National Center for Explosives Training Research (NCETR) in Huntsville, Alabama, which focused on improvised explosives devices. I also attended advanced explosives training at New Mexico Tech's Energetic Materials Research and Training Center, which focused on homemade explosives and various responses to a variety of bombing incidents.

4. Beginning in 2007, before I joined ATF, I served as a Special Agent with the Georgia Bureau of Investigation ("GBI"), where I conducted federal and state criminal investigations involving arson, homicide, internet crimes against children, sexual exploitation of children and digital/technology crimes. Those investigations regularly included computers, social media, cellular phones, and other digital media. I was a founding member of the GBI's Child Exploitation and Computer Crimes Unit, and for approximately five (5) years focused exclusively on computer crimes and the online exploitation of children. During this time, I led and participated in hundreds of investigations involving cellular telephones, computers, and social media, and have

authored hundreds of search warrants— federal and state—for technological devices and various types of social media accounts.

5. While serving as a GBI Agent, I was a Georgia Peace Officer's Standards and Training Council (POST) Certified Instructor. I trained over 30,000 law enforcement officers and social services personnel in the area of internet crimes and child exploitation. I further served as an instructor with the United States Department of State, and traveled to Israel, Brazil, and the Republic of Georgia to teach international law enforcement partners how to conduct technology, internet, and human trafficking investigations.

6. I prepared this affidavit for the limited purpose of demonstrating to a United States Magistrate Judge that there is probable cause to support the issuance of a criminal complaint charging JACKSON with arson, in violation of 18 U.S.C. § 844(i). The facts in this affidavit demonstrate that Jackson maliciously set a fire inside Target Corporation's corporate headquarters, which is a building used in interstate and foreign commerce, and in any activity affecting interstate and foreign commerce, on Wednesday, August 26, 2020. I do not claim that this affidavit sets forth everything known to me individually, or to law enforcement collectively, about this crime.

7. I learned the facts in this affidavit through my own personal participation in the investigation into this alleged arson; my training and experience; and, as described below in this affidavit, my interactions with witnesses and with other law enforcement officers.

## PROBABLE CAUSE

*Case History*

8. On Wednesday, August 26, 2020, the City of Minneapolis experienced arson, rioting, and vandalism of numerous business. The rioting and vandalism was, in part, a response to the death by suicide of a suspect in a homicide that occurred at approximately 2:00 p.m. on the

same date. When Officers approached the suspect at approximately 6:30 p.m., he committed suicide on the 800 block of Nicollet Mall in downtown Minneapolis

9. In response to a false rumor that police had shot and killed the individual, civil unrest, including arson, rioting, and vandalism, took place at different locations in Minneapolis, but was concentrated in downtown Minneapolis, particularly the Nicollet Mall. One of the businesses set on fire was the Target Headquarters building, located at 1000 Nicollet Mall.

10. At approximately 10:55 p.m., Target surveillance video showed a young, Black male wearing a white, sleeveless shirt and black shorts (later concluded, for the reasons given below in this affidavit, to be the defendant, Shador Tommie Cortez JACKSON) use a "Sidewalk Closed" construction sign to break through one of the glass doors into Target Headquarters. The door was located on Tenth Street South, between LaSalle Avenue and Nicollet Mall.



11. Target surveillance video, taken from inside the store, then showed JACKSON placing a white article of clothing around his head, going through a second door and entering the Target Headquarters mailroom. He then set a fire on a counter inside of the mailroom at

4

approximately 10:57 p.m.



12. At approximately 11:02 p.m., Target surveillance video showed JACKSON run out of the building, using the same door, and head southeast on 10th Street toward Nicollet Mall. A second subject, ("SUBJECT 2") wearing a dark colored shirt with a white design, a dark colored hat with a unique logo, and dark shorts, was observed running out of the building with him.



13.     At approximately 11:02 p.m., a Minneapolis city surveillance camera showed JACKSON and SUBJECT 2 walking southeast on 10th Street toward the 1000 block of Nicollet Mall. JACKSON appeared to be in a hurry and looked behind him, towards the location of the fire.



14. At approximately 11:02 p.m. JACKSON stopped and looked into the main Target entrance door located at 1000 Nicollet Mall, also in the direction of the fire, multiple times. JACKSON and SUBJECT 2 then continued walking southeast on 10th Street toward Nicollet Mall.





15. At approximately 11:29 p.m., city surveillance cameras showed JACKSON near the intersection of 11th Street South and Nicollet Mall, next to a white Ford Explorer with Minnesota license plate number ERG561. City surveillance cameras then showed SUBJECT 2 exit the driver's side of a Ford Taurus that was parked directly behind the Explorer. The two men talked in the street, and then JACKSON pointed an object toward the Ford Explorer. The lights of the Explorer flashed in the way vehicle lights flash when a keyless entry remote is used to unlock a vehicle. JACKSON then opened the Explorer's driver's door, reached into the Explorer, then got out of the Explorer and used the keyless entry remote (signified by the same flashing of the vehicle's lights) to lock the Explorer.

*Database Queries*

16. I queried Minnesota license plate ERG561 through law enforcement databases and determined that was the license plate number of a white 2006 Ford Explorer SUV bearing the VIN 1FMEU72EX6UA33015. The registered owner was Shador Tommie Cortez JACKSON (DOB: XX/XX//1996).[1] I obtained JACKSON's driver's license photograph from the Minnesota Department of Public Safety's Driver and Vehicle Services, and observed the driver's license

---

[1] As required by the local rules of this Court, dates of birth are partially redacted. I know the full date of birth, and will provide it to the Court upon request.

photograph strongly resembled JACKSON from both the Target surveillance system, and the City of Minneapolis camera system.

*Richfield Police Department Traffic Stop*

17. On Thursday, August 27, 2020, at approximately 12:49 a.m., a Richfield police officer on routine patrol stopped a white Ford Explorer with Minnesota license plate ERG561 near 67th Street and Nicollet Avenue South in Richfield, Minnesota. The officer stopped the vehicle because the Explorer's music system was playing so loud that it could be heard more than fifty feet away. The Richfield officer identified the driver as JACKSON. JACKSON told the Richfield officer that he was on his way home from downtown Minneapolis.

18. The Richfield officer saw, in plain view from his position outside the vehicle, multiple, open, alcohol bottles in the Explorer. The officer also smelled alcohol and marijuana coming from the Explorer. A check of public safety databases showed JACKSON's Minnesota driver's license was revoked. JACKSON was shirtless, but was wearing black shorts like those in the downtown Minneapolis and Target surveillance footage. When a second officer arrived, the first Richfield officer asked JACKSON to step out of the vehicle. When JACKSON did so, the first Richfield officer saw a small plastic bag containing a green leafy substance, suspected to be marijuana, in the driver's side door panel. JACKSON did not appear to be intoxicated.

19. JACKSON was placed in the back of a Richfield squad car. He was not in handcuffs. Officers searched the Explorer, and found clothes, purses, belts, a money counting machine, tobacco products, and liquor bottles. Many of the articles of clothing had their price tags still on them, but their security tags cut off.



20. JACKSON was placed under arrest, and was later charged by the Hennepin County Attorney's Office with receiving stolen property, in violation of Minn. Stat. § 609.53.1.

*Interview of JACKSON on August 28, 2020 by the Minneapolis Police Department*

21. On Friday, August 28, 2020, Minneapolis Police Department Sergeant Erika Christensen interviewed JACKSON at the Hennepin County Adult Detention Center. Sergeant Christensen informed JACKSON of his Miranda Rights. After waiving his Miranda Rights, among other things, JACKSON told Sergeant Christensen that he owned a white Ford Explorer, and that no one other than him was driving it on August 26, 2020.

*Bloomington Police Department Traffic Stop on September 1, 2020*

22. On September 1, 2020, the Bloomington Police Department stopped JACKSON for driving with a suspended license. JACKSON was driving the same 2006 white Ford Explorer SUV, bearing Minnesota license plate ERG561. JACKSON was issued a citation for the offense and was released.

*Fire Investigation and Arson Determination by the Minneapolis Fire Department*

23. On Thursday, August 27, 2020, ATF Special Agent Certified Fire Investigator (SACFI) Nicole Hajny and Minneapolis Fire Department Investigator Larry Oker examined the fire scene located at 1000 Nicollet Mall. Investigator Oker identified a single area of origin, the center of a desktop near the mailroom entrance. This is the location at which SUBJECT 1 is seen on Target surveillance video starting a fire. Investigator Oker additionally noted forced entry and numerous broken windows to the structure that occurred during the civil unrest around the time of the fire. Investigator Oker classified the fire as "incendiary" (i.e. arson).

24. SACFI Hajny observed the damage to the computer equipment on the desktop. The thermal damage to the computer equipment was top-down and directional, indicating that the fire was not a result of an internal failure of the computer equipment. No other ignition sources were observed in the area of origin. As noted above, my review of the Target surveillance video showed JACKSON igniting a fire on the desktop in the area of origin identified by investigators. JACKSON appeared to pour liquid from a bottle prior to or immediately after starting the fire. JACKSON was then seen emptying the bottle as he walked away from the desktop. Based on her training and experience as a fire investigator, SACFI Hajny informed me that JACKSON's actions were consistent with JACKSON pouring an ignitable liquid on the desktop in order to accelerate the growth of the fire.

*Interstate Nexus Statement*

25. Target Corporation is a large corporation with its corporate headquarters in Minneapolis, Minnesota. Target has numerous retail outlets throughout the United States. Target sources some of its inventory from outside the United States, including Guatemala, China, and India.

26. Target corporate headquarters is located in two adjacent buildings, Target Plaza South and Target Plaza North. The buildings are connected via skyway. The buildings cover two city blocks, and extend to the area of Tenth Avenue South and LaSalle Avenue. A Target retail store is located one block away on 9th Avenue, which also can be reached via skyway. That retail store was vandalized during the civil unrest described above.

27. The mailroom, located inside Target Headquarters where the fire started, receives a high volume of mail and merchandise samples from vendors. These samples are provided to employees, housed in Target Headquarters, for evaluation. The evaluation determines whether or not those items will be sold in Target retail stores.

28. Furthermore, Target stock is traded on major U.S. stock exchanges. In short, Target headquarters in Minneapolis is a building used in interstate and foreign commerce and in activities affecting interstate and foreign commerce.

## CONCLUSION

29.     Based on the foregoing facts, I respectfully ask that a criminal complaint and arrest warrant issue from this Court, charging the defendant, Shador Tommie Cortez JACKSON, with arson, in violation of 18 U.S.C. § 844(i).

*Sara Thomas* (signature)
Sara Thomas
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me by reliable electronic means (FaceTime and email) pursuant to Fed. R. Crim. P. 41(d)(3) on this 10 day of September, 2020.

*Tony N. Leung* (signature)
THE HONORABLE TONY N. LEUNG
UNITED STATES MAGISTRATE JUDGE