UNITED STATES OF AMERICA,

        Plaintiff,

v.

(1) SHADOR TOMMIE CORTEZ JACKSON,

        Defendant.

**POSITION OF UNITED STATES REGARDING SENTENCING**

The United States of America, by its attorneys, W. Anders Folk, Acting United States Attorney for the District of Minnesota, and Assistant United States Attorneys Joseph S. Teirab and Alexander D. Chiquoine, hereby submits its position regarding sentencing. The United States respectfully requests that the Defendant be sentenced to 33 months of imprisonment followed by three years of supervised release. This sentence justly punishes the Defendant for his serious crime of conspiracy to commit arson, deters the Defendant and others from committing future criminal acts, protects the public while providing the Defendant an opportunity for reformation, recognizes the Defendant's acceptance of responsibility, and avoids sentencing discrepancies, all without being greater than necessary to achieve these ends.

## I. BACKGROUND

### A. The Defendant's Upbringing and Struggles with Substance Abuse and Mental Health.

The Defendant, Shador Tommie Cortez Jackson ("Mr. Jackson"), is 24 years old and was that age at the time he committed the arson. (Presentence Investigation Report ("PSI") at F.2). Mr. Jackson was born and raised in Minneapolis. (PSI at ¶¶ 61–66). He reports a childhood marred by instability and abuse. (*Id.*). Mr. Jackson's

mother is disabled and his father, with whom he has had minimal contact, has been in and out of prison. (*Id.* at ¶ 61). Growing up, Mr. Jackson moved yearly throughout North Minneapolis. (*Id.* at ¶ 62). Mr. Jackson lived with both of his parents until 2003, when his father went to prison for First Degree Criminal Sexual Conduct. (*Id.* at ¶ 63). He reports that, over multiple years, his father physically, mentally, and verbally assaulted him and his siblings. (*Id.*). This abuse included being locked in dog cages as early as age six. (*Id.*).

In 2006, Mr. Jackson's mother began a relationship with a long-term boyfriend, who provided security and stability to the family. (*Id.* at ¶ 65). In 2017, his mother's boyfriend suffered a traumatic brain injury from a car accident, which was difficult for Mr. Jackson and his family. (*Id.*). At the time of the offense, Mr. Jackson was living with his fiancé. (*Id.* at ¶ 66). Mr. Jackson has one child, who lives with the child's mother in North Minneapolis. (*Id.*).

Unfortunately, Mr. Jackson has struggled with substance abuse throughout much of his life. He has used marijuana several times per week from age 15, but reports that he had not used marijuana for about two years prior to the instant offense. (*Id.* at ¶ 74). In 2018, Mr. Jackson began smoking marijuana cigarettes soaked in embalming fluid. (*Id.*). On the day of the instant offense, Mr. Jackson reports he was under the influence of synthetic cannabinoids and alcohol. (*Id.*).

Mr. Jackson's substance abuse appears tied, at least in part, to his untreated mental health issues. In 2019, he was diagnosed with schizophrenia, major depression, alcohol abuse disorder, and bipolar disorder. (*Id.* at ¶ 72). Mr. Jackson

is receiving treatment for anxiety and is prescribed medications to help manage his mental health issues. (*Id.* at ¶ 73).

Records indicate that Mr. Jackson held short-term jobs with temporary staffing agencies, a gas station, and a nursing home in recent years. (*Id.* at ¶ 78).

### B. The Defendant's Prior Criminal History.

Mr. Jackson's criminal history is not particularly extensive but includes one violent felony. (*Id.* at ¶¶ 42–56). In 2019, Mr. Jackson was convicted for Second Degree Assault with a Dangerous Weapon. (*Id.* at ¶ 43). Mr. Jackson and a co-defendant got into the victim's car to ostensibly sell marijuana, and Mr. Jackson pulled a gun on the victim. (*Id.*). The victim fled the car on foot and Mr. Jackson and his co-defendant stole the car. (*Id.*). When Mr. Jackson and his co-defendant were eventually arrested, both were in possession of guns. (*Id.*).

### C. The Defendant's Instant Criminal Offense.

On August 26, 2020, Minneapolis Police Department officers approached a homicide suspect in downtown Minneapolis. (*Id.* at ¶ 10). The homicide suspect used a handgun to kill himself in a public area. (*Id.*). Within an hour, the shooting garnered attention on social media based upon the false account that officers killed the homicide suspect. (*Id.* at ¶ 10). Large crowds gathered in downtown Minneapolis, which led to civil unrest, property damage, rioting, and looting. (*Id.*). About 72 businesses were damaged or destroyed that evening. (*Id.*). City leaders ordered local curfews, the governor declared a state of emergency, and a force of National Guard soldiers and law enforcement were deployed. (*Id.*).

That same day and into the night, Mr. Jackson, along with other co-conspirators, conspired to burn down the Target Corporation's headquarters ("Target Headquarters") located in downtown Minneapolis, Minnesota. (PSI at ¶¶ 13-14; Plea Agreement at ¶ 2(a) [Dkt. 70]).

Mr. Jackson and other co-conspirators gathered near Target Headquarters. (PSI at ¶ 13; Plea Agreement at ¶ 2(d)). Mr. Jackson used a construction sign to break through one of the glass doors of Target Headquarters. (*Id.*). Mr. Jackson and his co-conspirators then breached the doors and entered the building. (*Id.*). Mr. Jackson intentionally set a fire inside the mailroom. (*Id.*). Mr. Jackson attempted to light a second fire in the mailroom on top of cardboard boxes using a lighter and bottle of ignitable liquid. (*Id.*). Mr. Jackson left the building with one of his co-conspirators, co-defendant Victor Devon Edwards. (PSI at ¶ 13).

The arson caused by Mr. Jackson and his co-conspirators resulted in significant damage to Target Headquarters, most of which was caused by the fire's activation of the sprinkler system, totaling $939,591.98. (PSI at ¶ 21; Plea Agreement at ¶ 2(f)).

On August 27, 2020, Mr. Jackson was arrested on an unrelated matter. (*Id.* at ¶ 16). Officers searched Mr. Jackson's car and found approximately $2,543.90 worth of items stolen from various stores that were looted in downtown Minneapolis during the unrest described above. (*Id.*).

### D. Procedural History, Plea Agreement, and Sentencing Guidelines Calculation.

Mr. Jackson was federally arrested on September 10, 2020 via a criminal complaint charging him with arson. (*See US v. Jackson,* 20-mj-681 (TNL)). On

4

December 10, 2020. Mr. Jackson, along with co-defendant's Victor Devon Edwards and Leroy Lamonte Perry Williams, were charged via indictment with conspiracy to commit arson. (PSI at ¶ 1; Dkt. 22). On January 19, 2021, Mr. Jackson pleaded guilty to this charge. (PSI at ¶ 92; Dkt. 62).

In the Plea Agreement, the parties calculated Mr. Jackson's Guidelines as follows: an adjusted total offense level of 17, a criminal history category of III or IV, and a resulting advisory range of imprisonment of 30–37 months or 37–46 months. (Plea Agreement at ¶ 8(f)). The PSI concurs with the parties' Guidelines calculation, finding a criminal history category of III and a range of imprisonment of 30–37 months . (PSI at ¶ 83).

Assuming Mr. Jackson does not engage in any conduct inconsistent with acceptance, the Government will not move for an upward departure or variance from the Guidelines range. (Plea Agreement at ¶ 10). Mr. Jackson agrees that he will not seek a downward departure or variance from the Guidelines range. (*Id.*).

Mr. Jackson also agreed to pay restitution, which is mandatory, as ordered by the Court. (*Id.* at ¶ 13). Mr. Jackson agreed to be joint and severally liable with his co-conspirators Victor Devon Edwards and Leroy Lemonte Perry Williams. (*Id.*). At the time the plea agreement was executed, restitution was not finalized. (*Id.*). Mr. Jackson agreed to work with the United States to finalize restitution before sentencing. (*Id.*). In a joint letter filed on February 17, 2021, the parties notified the Court of an agreed-upon final restitution amount of $884,576.24. (Dkt. 99). Since that time, Target Corporation updated their final restitution claim, which is $939,591.98. (PSI at ¶ 21).

5

Mr. Jackson waives his appeal rights, with the exception of the substantive reasonableness of a term of imprisonment above the high end of the Guidelines range as determined by the Court, and the amount of restitution. (Plea Agreement at ¶ 15). Similarly, the Government waives its appeal rights, with the exception of the substantive reasonableness of a term of imprisonment below the low end of the Guidelines range as determined by the Court. (*Id.*). Mr. Jackson also waives his rights under 28 U.S.C. § 2255, except with regards to a claim of ineffective assistance of counsel. (*Id.*).

## II. ARGUMENT

In keeping with the Plea Agreement and the Guidelines' advisory sentence, the Government respectfully requests that the Court sentence Mr. Jackson to 33 months of imprisonment followed by three years of supervised release. This sentence strikes the right balance, accounts for the considerations set forth in 18 U.S.C. § 3553(a), and is not greater than necessary.

### A. Accounting for the Defendant's history and characteristics, the seriousness of his crime, the need to provide just punishment, and protecting the public.

A sentence of 33-months of imprisonment with three years of supervised release to follow accounts for the history and characteristics of Mr. Jackson, acknowledges the seriousness of his offense, provides just punishment for his crime, and protects the public. *See* 18 U.S.C. §§ 3553(a)(1), 3553(a)(2)(A), 3553(a)(2)(C). Mr. Jackson's crime was undoubtedly serious, and he committed it knowingly and intentionally. The arson took place on the heels of a false report of a police shooting, but Mr. Jackson's actions were not some valid (though innocently mistaken)

expression of civil disobedience towards a system he believes is unfair. They were lawless, dangerous, and immensely destructive. He joined with others at Target Headquarters not as a mere passive observer, but rather as an instigator and determined criminal. *He* was the one who broke the glass door, enabling himself and others to enter Target Headquarters. *He* then lit a fire inside the building, risking the lives of anyone who was inside and first responders, and disrupting the important work of a major Minnesota based business, as well as the livelihoods of the Minnesotans it employs. In total, Mr. Jackson's callous behavior cost Target Headquarters $939,591.98. A significant term of incarceration is necessary to punish this serious crime.

However, there are mitigating factors to consider. First, Mr. Jackson's struggles with mental health and substance abuse are apparent. Although his mental illness and addictions do not excuse his criminal conduct, they undoubtedly contributed to his poor choices and callousness towards others. Second, Mr. Jackson's childhood was difficult, which included a horribly abusive father and family instability. These challenges in no way excuse Mr. Jackson's criminal conduct—many other individuals faced with similar obstacles do not resorted to criminality—but they do contextualize his behavior.

To balance these competing considerations, the Government proposes a sentence of 33 months, which is just below the middle of Mr. Jackson's Guidelines range. A three-year term of supervised release to follow will provide additional protection to the public, while also giving Mr. Jackson structure and accountability that will support his reformation.

### B. Deterring crime and promoting respect for the law.

The Government's proposed sentence will deter Mr. Jackson, and others, from committing crimes in the future and promote respect for the law. *See* 18 U.S.C. §§ 3553(a)(2)(A), 3553(a)(2)(B). Although his criminal history is relatively short, Mr. Jackson's prior sentence and status on supervision did not deter him. A significant sentence of incarceration is necessary to deter Mr. Jackson, and others like him,[1] from future criminality.

### C. Avoiding unwarranted sentencing disparities.

Mr. Jackson's accomplice, Mr. Williams, has pleaded guilty to one count of conspiracy to commit arson. (*See US v. Williams*, 20-cr-188(3) (PJS/ECW)). Mr. Jackson's other accomplice, Mr. Edwards, is awaiting trial. (*See US v. Edwards*, 20-cr-188(2) (PJS/ECW)). Mr. Jackson's criminal history is less extensive than Mr. Williams', such that Mr. Williams' anticipated Guidelines range is higher (51–60 months) than Mr. Jackson's, despite their relatively similar role in the offense. (Dkt. 93 at ¶ 112). To ensure no unwarranted discrepancies between the sentences for Mr. Jackson and Mr. Williams, and to account for their respective culpability, a sentence within Mr. Jackson's Guidelines range is necessary. The Government's proposed

---

[1] Deterring others from committing similar crimes is an especially important objective here. Civil discourse and unrest have increased in recent years, making the distinction between lawful protest and criminality important to emphasize. The freedom to peacefully assemble and speak-out against perceived injustices are bedrock rights that are integral to our democracy. However, when individuals like Mr. Jackson engage in wanton criminality ostensibly in the name of the same issues being debated/protested, it only serves to undermine the legitimate, peaceful exercise of these important rights by others. Therefore, deterring the sort of criminality Mr. Jackson engaged in is particularly important.

sentence of 33 months accomplishes these ends without unduly punishing Mr. Jackson.

### D. Providing the Defendant with an opportunity for reformation and acknowledging his acceptance of responsibility.

A considerable term of incarceration is necessary to provide Mr. Jackson with needed treatment and an opportunity to reform himself. *See* 18 U.S.C. § 3553(a)(2)(D). However, a sentence near the middle of his Guidelines range accomplishes this end, while also acknowledging his acceptance of responsibility.

Mr. Jackson is clearly in need of mental health and substance abuse treatment. His struggles with these issues have negatively shaped his life. While incarcerated, and later while on supervised release, Mr. Jackson will have an opportunity to engage with this needed treatment. A term of incarceration within the Guidelines range will ensure that while in the carefully monitored environment of a prison, Mr. Jackson can access needed programming and treatment for a prolonged period.

Mr. Jackson should also receive a sentence that credits his acceptance of responsibility. As the Court is aware, not all acceptance is created equal. Many defendants "accept responsibility" only after filing numerous (and often frivolous) motions that waste executive and judicial time, or equivocate and minimize their involvement until the very end, yet they still receive full "credit" in the form of a two- or three-level reduction to their offense level. By-in-large, Mr. Jackson did not do this. When arrested federally—and after having an opportunity to review the evidence against him—Mr. Jackson agreed to plead guilty, thereby saving the Government and the Court considerable resources. A sentence in the middle, and not

the top, of Mr. Jackson's Guidelines range appropriately credits his acceptance of responsibility.

### E. Restitution.

Mr. Jackson has agreed to pay restitution, which is mandatory in this case. (Plea Agreement at ¶ 13). Mr. Jackson agreed to work with the United States to finalize restitution before sentencing. (*Id.*). In a joint letter filed on February 17, 2021, the parties notified the Court of an agreed-upon final restitution amount of $884,576.24. (Dkt. 99). Since that time, Target Corporation updated their final restitution claim, which is $939,591.98. (PSI at ¶ 21). The Government asks that restitution be set at $939,591.98, with joint and several liability, for Mr. Jackson.

## III. CONCLUSION

The Government respectfully requests that the Court impose a sentence of 33-months' imprisonment with three years of supervised release to follow. This sentence strikes the right balance. Mr. Jackson's crime, conspiring with others to attempt to burn down Target Headquarters in downtown Minneapolis (and causing hundreds of thousands of dollars in damage), is unquestionably serious. Mr. Jackson's limited, but concerning criminal history, along with the instant offense, make him a danger to the public. However, Mr. Jackson is not beyond hope, and there are mitigating factors to consider. Mr. Jackson's upbringing marred by instability and abuse, and his struggles with mental health and substance abuse, put into context his criminality. Thus, to protect the public and justly punish his serious offense, while

also providing Mr. Jackson with an opportunity for reformation, a significant term of incarceration is appropriate and necessary.

Dated: April 20, 2021　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　W. ANDERS FOLK
　　　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　　　*/s/ Joseph S. Teirab*

　　　　　　　　　　　　　　BY:　　　JOSEPH S. TEIRAB
　　　　　　　　　　　　　　　　　　　Assistant U.S. Attorney
　　　　　　　　　　　　　　　　　　　Attorney ID No. 0393439MN
　　　　　　　　　　　　　　　　　　　ALEXANDER D. CHIQUOINE
　　　　　　　　　　　　　　　　　　　Assistant U.S. Attorney
　　　　　　　　　　　　　　　　　　　Attorney ID No. 0396420MN